J-A12002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AMY LEE PALMER | |
| Appellant | No. 1039 WDA 2016 |

Appeal from the Judgment of Sentence January 29, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000311-2014

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY SOLANO, J.:                    **FILED NOVEMBER 07, 2017**

Appellant, Amy Lee Palmer, appeals the judgment of sentence imposed after she was convicted of insurance fraud, attempting theft by deception, and forgery.[1] We affirm.

This matter relates to dental services Appellant obtained from Dr. Thomas Gretz of Dental Surgeons and Associates in Scottdale, Pennsylvania, on March 8, 2012. Dr. Gretz required assurance that Appellant's insurer would pay for a dental procedure before he performed that work. Therefore, Appellant told Dr. Gretz that she had the required authorization for the procedure from her insurance company and showed him what she represented to be an insurance authorization letter from Agency Insurance Company (AIC) of Maryland. The letter was fabricated; it included Appellant's ex-husband's phone number and purportedly was

_____

[1] 18 Pa.C.S. §§ 4117(a)(2), 901(a), and 4101(a)(3), respectively.

signed by someone named "Nakita Jones," who did not actually work at AIC. *See* Commonwealth's Exhibit-1; N.T. at 15-17; Trial Ct. Op. at 6. Appellant was not an AIC insured. N.T. at 55; Trial Ct. Op. at 4-5.

After completing the dental procedure, Dental Surgeons billed AIC $2,896, and sent the "Nakita Jones" letter to it as part of the claims package. N.T. at 55; Trial Ct. Op. at 4-5. AIC then informed Dental Surgeons that Appellant was not insured by AIC. Thereafter, Appellant's mother paid Dental Surgeons for Appellant's dental work. The mother later was reimbursed by her insurance provider, Highmark, Inc., which paid $1,986.02 for the procedure. N.T. at 55, 60-61; Trial Ct. Op. at 4.[2]

Appellant was convicted following a non-jury trial on November 2, 2015. On January 29, 2016, she was sentenced for criminal attempt to five years' Intermediate Punishment, with six months Home Electronic Monitoring. On the claims of insurance fraud and forgery, she was sentenced to five years' probation for each count, with each sentence to run concurrently to her sentence for criminal attempt. On February 5, 2016, Appellant timely filed Post-Sentence Motions that were denied on June 23, 2016. On July 18, 2016, Appellant filed a timely notice of appeal.

In her appeal, Appellant raises the following issues, as stated in her brief:

---

[2] It appears from the record that Appellant engaged in the fraud because there were delays in Highmark's processing of Appellant's precertification request and there was some possibility Highmark would deny it. Appellant did not want to wait for Hallmark to finish its processing of the claim because she had scheduled an upcoming wedding ceremony. N.T. at 8, 40.

> 1.     Whether the [trial court] erred in sustaining the Appellant's conviction for Insurance Fraud as the Appellant's acts did not satisfy the elements of Insurance Fraud under 18 Pa.C.S.A. § 4117(a)(2).
>
> 2.     Whether the [trial court] erred in sustaining the Appellant's conviction for Criminal Attempt - Theft by Deception by False Impression when the Appellant never obtained property from Dental Surgeons . . . and fully compensated them for their services.
>
> 3.     Whether the [trial court] erred in maintaining that the grading of the Criminal Attempt - Theft by Deception was a Third Degree Felony, rather than a First Degree Misdemeanor, based on the valuation of the dental services provided.
>
> 4.     Whether [t]he [trial court] erred in finding the Appellant's conviction for Forgery was based on sufficient evidence.

Appellant's Brief at 2.

**Insurance Fraud**

First, Appellant insists that the trial court "erred in sustaining [her] conviction for Insurance Fraud as the Appellant's acts did not satisfy the elements of Insurance Fraud under 18 Pa.C.S.A. § 4117(a)(2)." Appellant's Brief at 4.

> Our standard of review for a sufficiency of the evidence challenge is well established:
>
> > A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

***Commonwealth v. McFadden***, 156 A.3d 299, 303 (Pa. Super. 2017) (citation omitted).

- 3 -

In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014).

Section 4117(a)(2) defines the offense of insurance fraud as follows:

**(a) Offense defined.—**A person commits an offense if the person does any of the following: . . .

(2) Knowingly and with the intent to defraud any insurer or self-insured, presents **or causes to be presented** to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S. § 4117(a)(2) (emphasis added).

Appellant concedes that the Commonwealth established that when she fabricated a letter from AIC and presented it to Dr. Getz, she provided false or misleading information. She insists, however, that she did not commit insurance fraud because she did not present that letter to an insurer. Rather, she presented the letter to Dental Surgeons, which then presented the letter to AIC as part of its claim for payment. Appellant's Brief at 5.

After a thorough review of the record, the briefs of the parties, and the applicable law, we agree with the well-reasoned opinion of the Honorable Christopher A. Feliciani on this issue:

> In the present case, the Criminal Information alleges that on or about March 8, 2012 and dates thereafter, [Appellant], with the intent to defraud AIC, presented paperwork to Dental Surgeons . . . indicating that [Appellant]'s dental procedure would be covered under her policy, when in fact, she did not have dental insurance with AIC. [Appellant] alleges that the Commonwealth's evidence did not support the charge of insurance fraud because the Commonwealth did not prove beyond a reasonable doubt that she submitted a statement or any type of claim for insurance coverage to AIC. Additionally, [Appellant] avers that she did not have an insurance policy with AIC nor does AIC provide the type of coverage that would have been applicable to this case. To the contrary, the Commonwealth argues that it met its burden through circumstantial evidence presented at the non jury trial.
>
> Upon a review of the evidence and relevant statute in this case, this [c]ourt finds that the Commonwealth has established the elements of insurance fraud beyond a reasonable doubt. The circumstantial evidence presented during the non jury trial is clear on its face. The [trial c]ourt finds that although [Appellant] did not directly submit a claim to AIC, she indicated to [Dental Surgeons] that the dental procedure was authorized by her insurance provider. Likewise, minutes after [Appellant] told [Dental Surgeons] that the procedure was covered by her Insurance Company; a nurse at the hospital was holding a letter from AIC confirming coverage of the procedure. [Appellant] cannot extricate certain relevant facts to support her theory that she did not intend to defraud AIC. Reviewing the evidence as a whole indicates to th[e trial c]ourt that [Appellant] intended to defraud AIC by submitting or causing to submit a fraudulent letter from AIC to [Dental Surgeons], which induced [Dental Surgeons] to perform the dental procedure. Therefore, the motion to dismiss [the charge of insurance fraud was properly] denied.

Trial Ct. Op. at 2-3.

Although Appellant correctly points out that she did not present any false statement **directly** to an insurer, she overlooks the statutory language providing that it is unlawful if she "presents **or causes to be presented** to any insurer" a statement that is part of a false insurance claim. ***See*** 18 Pa.C.S. § 4117(a)(2). Appellant's reliance on the plurality opinion in ***Commonwealth v. Goodson***, 33 A.3d 611 (Pa. 2011), for a contrary result is misplaced. The defendant in ***Goodson*** forged a check from "State Farm" to himself and presented the check to his bank, where it was deposited into a new account in the defendant's name that was then used by him as a source of funds. In holding that this misconduct (which constituted both forgery and theft) did not constitute insurance fraud, the plurality opinion explained, "Just because the bogus check shows an insurance company's name doesn't make the crime insurance fraud." ***Id.*** at 613-14. The plurality noted that no insurance claim was made with the forged check, and that the check was not a "statement" of false insurance information. ***Id.*** It added that "Goodson gave nothing to an insurer," ***id.*** at 613, and Appellant relies on that phrase. But the Court's point was not that there can be no insurance fraud without direct presentation of a statement to an insurer; it was that a review of all of the defendant's conduct did not show that it amounted to insurance fraud. The Court gave no indication that the phrase "causes to be presented" could not support a conviction when, as here, a defendant's conduct sets in motion a process by which the defendant's false statement is presented to an insurer by a third party.

As we agree with the trial court that the record establishes that Appellant presented the forged letter to Dental Surgeons with knowledge that it would be presented to AIC, this issue merits no relief.

**Criminal Attempt — Theft by Deception**

Appellant argues that the trial court "erred in sustaining the Appellant's conviction for Criminal Attempt – Theft by Deception by False Impression when the Appellant never obtained property from Dental Surgeons . . . and fully compensated them for their services." Appellant's Brief at 6.

The criminal attempt statute states: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). The crime of theft by deception is set forth in Section 3922(a) of the Crimes Code, the relevant portion of which provides:

> A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise . . . .

18 Pa.C.S. § 3922(a)(1).

*Theft of Property*

Appellant maintains that she cannot be guilty under Section 3922(a)(1) unless she "obtain[ed] or [withheld] property of another" and

that "the Commonwealth produced no evidence that the Appellant obtained any property from Dental Surgeons." Appellant's Brief at 3, 7. Appellant points out that the Commonwealth claimed she "obtained dental **services**, not **property**," because she "induced [Dental Surgeons] into performing a dental **procedure**." *Id.* at 3-4, 7 (emphasis added). Therefore, Appellant reasons, "no theft occurred" under Section 3922(a)(1). *Id.* at 8. The Commonwealth responds that "dental services are a thing of value that fit within the definition of property contained in Chapter 39 of the Pennsylvania Crimes Code." Commonwealth's Brief at 5. It continues:

> The basis of this charge, however, was [Appellant]'s attempted theft of money from AIC rather than of services from [Dental Surgeons], which would clearly constitute property.
>
> Even if the dental services were what was at issue here, [Appellant]'s argument with respect to the classification of dental services is flatly contradicted by 18 Pa.C.S.A. § 3901, which defines property for the purposes of Chapter 39 of the Crimes Code as "anything of value["] . . . The Commonwealth submits that dental services would clearly be classified as something of value and thus constitute property within the meaning of the Theft statute.

*Id.* at 9. The trial court did not specifically address this issue.

We conclude that Appellant is not entitled to relief on this argument. The Crimes Code defines "property" as: "Anything of value, including real estate, tangible and intangible personal property, contract rights, choses-in-action and other interests in or claims to wealth, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power." 18 Pa.C.S. § 3901. Appellant's attempt to defraud AIC into paying

for her dental procedure meets this definition because it was an attempt to defraud AIC of money.

Even if we characterize Appellant's misconduct as an effort to obtain dental services, such services still fall within Section 3901's definition of "property" as "Anything of value." Dental services certainly have value, as evidenced by the fact that Dental Surgeons charged nearly $3,000 for Appellant's dental procedure here. After defining "property" as "[a]nything of value," Section 3901 lists some types of property encompassed within that general definition, and precedes that list by the word "including," but this list does not in any way narrow the definition of "property" as "anything of value." To the contrary, we have held that the word preceding the list — "including" — is a word of "enlargement and not limitation." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 963 (Pa. Super. 2011) (*per curiam*), **aff'd**, 106 A.3d 656 (Pa. 2014) (*per curiam*), **cert. denied**, 136 S. Ct. 1512 (2016).[3] Because Appellant tried to steal services from Dental Surgeons and

---

[3] In **Braun**, this Court explained:

> A term whose statutory definition declares what it "includes" is more susceptible to extension of meaning by construction than where the definition declares what a term "means." It has been said "the word 'includes' is usually a term of enlargement, and not of limitation.... It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated...."

**Braun**, 24 A.3d at 963-64 (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes & Statutory Construction* § 47:7 (7th ed. 2007) (footnote omitted)).

- 9 -

because such services are "property" under Section 3922(a), Appellant is not entitled to relief.[4]

*Repayment*

Appellant also contends that there was no theft because "Dental Surgeons . . . were fully compensated for their services as the Appellant's mother paid for the services and was ultimately reimbursed by her insurer, Highmark, Inc." Appellant's Brief at 7. The Commonwealth counters:

> [Appellant]'s criminal attempt was complete at the time she furnished [Dental Surgeons] with fraudulent indicia of insurance coverage in order to obtain treatment and is by no means negated by the subsequent payment. **See Commonwealth v. Sanchez**, 848 A.2d 977, 986 (Pa. Super. 2004) (Defendant's theft by deception from insurance company involved amount over $2,000 and, thus, was third-degree felony rather than first-degree misdemeanor, even though finance company that secured car loan ultimately returned all but $272 of amount paid by insurer to release car, and amount of insurance deductible lost by insurer was $500; offense was completed at moment when insurer paid false insurance claim of over $7,000 to finance company on behalf of defendant.) Even assuming *arguendo* that the belated payment for services rendered would somehow preclude a Theft conviction, there is no reason to believe that this would preclude a conviction for Criminal Attempt under the facts and circumstances of this case.

Commonwealth's Brief at 9-10.

---

[4] We recognize that, on these facts, there is overlap between theft by deception under Section 3922(a) and theft of services under Section 3926 of the Crimes Code, 18 Pa. C.S. § 3926(a)(1), which provides, "A person is guilty of theft if he intentionally obtains services for himself or for another which he knows are available only for compensation, by deception or threat." Appellant does not argue that this overlap somehow precludes her conviction under Section 3922(a). The Crimes Code provides that "[c]onduct denominated theft in this chapter constitutes a single offense." 18 Pa. C.S. § 3902.

The trial court found that Appellant's argument lacked merit. The court opined: "At the time of the procedure, there was no indication from Dr. Gretz's office that Highmark would cover [Appellant's] procedure because there was no pre-certification." Trial Ct. Op. at 4.

Our cases make clear that the defendant's intent at the time of the theft or attempted theft is controlling. *See Commonwealth v. Bruce*, 607 A.2d 294, 297 (Pa. Super. 1992) ("to be guilty of theft by deception, it was essential that appellant obtained the" property "intending not to pay . . . for it . . . at the time of the transaction"). "[A]n intent to repay . . . or return the property does not necessarily ameliorate [a] defendant's guilt." *Commonwealth v. Grife*, 664 A.2d 116, 120 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1196 (Pa. 1996). *Cf. Commonwealth v. Wilkes*, 676 A.2d 266, 269 (Pa. Super. 1996) (*en banc*) (declining to infer intent from subsequent refusal to pay).

Here, the record supports the trial court's determination that Appellant intended to steal dental services from Dental Surgeons and payment from AIC at the time she delivered the fabricated letter to Dental Surgeons. That intent was sufficient for conviction. The fact that Dental Surgeons was later paid by Appellant's mother does not negate Appellant's intent at the time she presented the letter. We therefore hold that no relief is due.

### Grading

Appellant challenges the trial court's grading of her offense of attempted theft by deception. Specifically, she contends that the offense

should have been graded as a first-degree misdemeanor under Section 3903(b) of the Crimes Code, 18 Pa. C.S. § 3903(b), rather than as a third-degree felony under Section 3903(a.1), *id.* § 3903(a.1). Appellant's Brief at 8. We have held:

> The proper grading of a criminal offense is an issue of statutory interpretation and implicates the legality of the sentence imposed. For this reason, it may not be waived. The interpretation of a statute is a pure question of law, and therefore our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Felder*, 75 A.3d 513, 515 (Pa. Super. 2013) (citations omitted), *appeal denied*, 85 A.3d 482 (Pa. 2014).

Under the relevant provisions of Section 3903, theft is graded as follows:

> **(a.1) Felony of the third degree.**—Except as provided in subsection (a) or (a.2),[5] theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property. . . .
>
> **(b) Other grades.**—Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree . . . .
>
> **(c) Valuation.—**The amount involved in a theft shall be ascertained as follows:
>
> > (1) Except as otherwise specified in this section, value means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime.

---

[5] Section 3903(a) and (a.2) are not applicable here.

Appellant argues: "As Highmark, Inc. determined that the fair market value of [Dental Surgeons'] services totaled $1,986.02 – less than the $2,000.00 proscribed by § 3903(a.1) – the offense should be graded as a First Degree Misdemeanor. *See* 18 Pa.C.S.A. § 3903(b)." Appellant's Brief at 8. The Commonwealth replies: "At the time [Appellant] fraudulently induced [Dental Surgeons] to perform dental work upon her, the agreed-upon price for those services was $2,896.00. The fact that Highmark came in after the fact and determined that it would only pay $1,986.02 is completely irrelevant." Commonwealth's Brief at 11. The trial court "agree[d] with the Commonwealth's position and [found] that Highmark's reimbursement rate to [Appellant] for a lesser amount [was] immaterial to her intent." Trial Ct. Op. at 5.

The Crime Code requires that we value the "amount involved" as "the market value of the property at the time and place of the crime." 18 Pa.C.S. § 3903(c)(1). In *Commonwealth v. Sanchez*, 848 A.2d 977, 982 (Pa. Super. 2004), an insurance company originally paid a claim for $7,730.90. After the insurance company realized that the insured had committed theft by deception, it was able to recoup all but $272. *Id.* at 982, 986. The trial court graded appellant's theft as a third-degree felony, but the defendant urged that it should have been graded as a first-degree misdemeanor, as the insurance company ultimately lost less than $2,000. *Id.* at 986. This Court agreed with the trial court, holding:

> The crime was completed at the moment [the insurance company] paid the false insurance claim. The fact that . . . the

- 13 -

recipient of the funds resulting from the false claim[] ultimately returned the money to [the insurance company] is of no moment. The amount ultimately lost by [the insurance company] was not the amount taken at the time and place of the crime.

*Id.*

Analogously, here, the amount ultimately paid by Highmark to Appellant's mother for Appellant's dental procedure, $1,986.02, was not the amount that Appellant attempted to take at the time and place of the crime, *i.e.*, $2,896. ***See Sanchez***, 848 A.2d at 986; ***see also*** N.T. at 55, 60-61; Trial Ct. Op. at 4-5. Thus, we conclude that the trial court properly graded the attempted theft offense as a third-degree felony. ***See Sanchez***, 848 A.2d at 986; Trial Ct. Op. at 5.

**Forgery**

Finally, Appellant maintains that the trial court "erred in finding [her] conviction for Forgery was based on sufficient evidence," because her "Forgery conviction was based almost entirely on hearsay and circumstantial evidence." Appellant's Brief at 9. More specifically, she asserts: "At trial, the Commonwealth contended that the Appellant faxed a forged letter to Dental Surgeons and Associates claiming that her procedure would be covered by AIC. The Commonwealth, however, failed to produce any evidence placing the forged letter in the hands of the Appellant." *Id.*

Appellant was convicted under Section 4101(a)(3) of the Crimes Code, 18 Pa.C.S. § 4101(a)(3):

>**A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:**
>
>>(1) alters any writing of another without his authority;
>>
>>(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
>>
>>**(3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.**

18 Pa.C.S. § 4101(a)(3) (emphasis added).

>In addressing Appellant's argument, the trial court stated:
>
>During the non jury trial, the Commonwealth presented evidence that [Appellant] informed [Dental Surgeons] that she had authorization for the dental procedure and minutes later a nurse at the hospital had the letter from AIC which indicated that the procedure was covered. Additionally, [Appellant]'s ex-husband's phone number was included in the forged letter from AIC. Based upon a review of the direct and circumstantial evidence, th[e trial c]ourt [found] that the Commonwealth has proven each element of [forgery] beyond a reasonable doubt.

Trial Ct. Op. at 6-7. We agree. Appellant produced the forged letter to Dental Surgeons. In doing so, she transferred that writing to Dental Surgeons in a way that made it appear that it was from AIC when in fact it was not. The evidence supported the trial court's finding that Appellant caused the letter to be provided to Dental Surgeons with knowledge that it was forged. Appellant therefore is not entitled to relief on this claim.

For these reasons, all of Appellant's claims raised on appeal are meritless.  Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/2017